IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ROSE M. McPHEARSON (BARBER)                                        Plaintiff

v.                             5:05CV00007 GH/HDY

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration,                                           Defendant

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge George Howard, Jr.  The parties may file specific written objections to these findings and recommendations and must provide the factual or legal basis for each objection.  An original and two copies of the objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations.  A copy must be served on the opposing party.  The District Judge, even in the absence of objections, may reject these findings and recommendations in whole or in part.

### DISPOSITION

Plaintiff, Rose M. McPhearson (Barber), has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Disability Insurance benefits and Supplemental Security Income, based on disability.  Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the

record as a whole and free of legal error.  Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision.  Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Plaintiff alleged disability based on arthritis, diabetes, high blood pressure, poor blood circulation in her extremities, back pain, leg weakness, blurry vision and slight heart problems.  (Tr. 106) The Commissioner found that she was not disabled within the meaning

of the Social Security Act.  The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, the Administrative Law Judge[1] (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through January 31, 2003, the date of her decision.  (Tr. 23)  On November 17, 2004, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (Tr. 4-6)  Plaintiff then filed her complaint initiating this appeal.  (Docket #2)

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 45 years old at the time of the hearing.  (Tr. 436)  She completed the eighth grade in school.  (Tr. 129, 172, 435)  She has past relevant work as a small parts packer, home health aide and cook.  (Tr. 16, 107, 78-85, 87-95, 464-65)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process.  The first step involves a determination of whether the claimant is involved in substantial gainful activity.  20 C.F.R. § 404.1520(b) (2002).  If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

---

[1]The Hon. Eleanor T. Moser.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has a severe impairment or combination of impairments.  <u>Id.</u>, § 404.1520(c); <u>see</u> 20 C.F.R. § 404.1526.  If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling.  <u>Id.</u>, § 404.1520(d).  If so, benefits are awarded; if not, the evaluation continues.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work.  <u>Id.</u>, § 404.1520(e).[2]  If so, benefits are denied; if not, the evaluation continues.

Step 5 involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience.  <u>Id.</u>, § 404.1520(f).  If so, benefits are denied; if not, benefits are awarded.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (Tr. 22)  She found that Plaintiff had "severe" impairments, diabetes mellitus,

---

[2] In regulations that became effective September 25, 2003, the Social Security Administration amended and clarified certain aspects of the sequential evaluation process in ways not material to this opinion. 20 C.F.R. § 404.1520(e) and (f) were redesignated 20 C.F.R. § 404.1520(f) and (g), respectively.  68 Fed. Reg. 51153, 51161–62 (August 26, 2003).

4

hypertension and depression, but that she did not have an impairment or combination of impairments that met or equaled a Listing. Id. She judged that Plaintiff's subjective allegations were not borne out by the overall record and were not credible. Id.

The ALJ found that Plaintiff retained the residual functional capacity for light, unskilled work. Id. She relied on vocational expert testimony in finding that Plaintiff's past relevant work as a small parts packer did not require the performance of work-related activities precluded by her limitations, and that her impairments did not prevent her performing her past relevant work. Id. Consequently, the ALJ concluded that Plaintiff was not disabled. Id.

Plaintiff argues that the ALJ should have given greater weight to the opinion of Manuel Kelly, M.D., her treating physician. (Br. 14-16) On August 12, 2002, Dr. Kelly completed two forms brought to him by Plaintiff. (Tr. 394) On the first, entitled "Diabetes Report," he checked three boxes indicating that Plaintiff would need longer than normal breaks during a workday, would be absent more than four days a month and would frequently have symptoms interfering with attention and concentration. (Tr. 399) On the second, entitled "Medical Source Statement of Ability to do Work-related Activities (Physical)," he checked boxes reflecting various restrictions on Plaintiff's ability to work. (Tr. 400-02) In sum, Dr. Kelly gave an opinion that Plaintiff was unable to work.

The ALJ considered Dr. Kelly's opinion, but found it unpersuasive and in conflict with his own medical records pertaining to Plaintiff and the rest of the record. (Tr. 18) Plaintiff's

amended alleged onset date was December 23, 2001.[3] (Tr. 429) On January 4, 2001, Dr. Kelly saw Plaintiff, who complained of pain in her little finger, pelvis and back, some difficulty urinating and incontinence. (Tr. 329) He noted that her Type II diabetes mellitus was under "good control." Id. Her blood sugar was 133. Id. Until relatively recently, a fasting plasma glucose level equal to or greater than 140 was the criteria for diagnosis of diabetes mellitus. The Merck Manual 170, Table 13-2 (17th ed. 1999). The American Diabetes Association recommended that it be lowered to >126. Id. On August 8, 2002 (four days before Dr. Kelly completed the two forms), Plaintiff's fasting blood sugar level was 75. (Tr. 394) On January 28, 2002, it was 93. (Tr. 395) A random blood sugar reading of 137 was recorded December 13, 2001. (Tr. 396) January 4, 2001, it was 133. (Tr. 398)

Plaintiff saw Dr. Kelly three times between January 4, 2001, and August 12, 2002, when he completed the two forms. (Tr. 395-97) On none of these visits did Plaintiff have complaints concerning her diabetes. Id. Substantial evidence supports the ALJ's decision to discount Dr. Kelly's opinion as reflected in the August 12, 2002, forms. The conclusory opinion of a treating physician, especially if it contradicts other opinions by the same physician, is entitled to

---

[3] Plaintiff originally contended that she became unable to work April 6, 1999. (Tr. 47, 54) However, at the hearing, she testified that she worked full time-time until December 22 or 23 of 2001. (Tr. 427) In addition, there was a prior ALJ decision denying disability dated March 22, 2000. (Tr. 426) That decision would have been res judicata. That ALJ decision was appealed to this Court, but was ultimately dismissed for failure to prosecute. McPhearson v. Massanri, 5:01CV00002 HLJ (E.D. Ark. Judgment Oct. 24, 2001).

little weight.  Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993). The ALJ properly focused on Plaintiff's ability to function despite her impairment, rather than on a diagnosis. Anderson v. Apfel, 996 F.Supp 869, 873 (E.D. Ark. 1998).  There must be a functional loss establishing an inability to engage in substantial gainful activity before disability occurs. Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990).

In addition, Plaintiff testified that her medication controlled her blood sugar "pretty well." (Tr. 441)  If an impairment can be controlled by treatment or medication, it cannot be considered disabling.  Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995); Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993). Furthermore, that testimony undermined Dr. Kelly's opinion that she was unable to work. See Besler v. Sullivan, 963 F.2d 176, 178 (8th Cir. 1992)(doctor's report discounted because it was inconsistent with claimant's testimony).

Next, Plaintiff contends that the Commissioner's assessment of her depression was not supported by substantial evidence on the record as a whole.  (Br. 16-18)  She emphasizes a consultative examination by Nancy J. Toombs, Ph.D. (Br. 16-17) Plaintiff saw Dr. Toombs in October of 2001, before her amended alleged onset date. (Tr. 231-35)  Plaintiff told Dr. Toombs that she last worked in 1999, for Tyson's Food. (Tr. 231) However, she testified that she had last worked in December of 2001.  (Tr. 427)   She worked at Snow White Grill and Kelly's Restaurant.   Id.   She worked at Snow White approximately seven months. (Tr. 431)  Therefore, according to her

7

testimony, she was working in October of 2001 when she saw Dr. Toombs.  Dr. Toombs' opinion that Plaintiff was fragile and "certainly in no condition to be a work candidate" was based, in part, on erroneous information.[4]  She also told Dr. Toombs that she had an ulcer that had been acting up.  (Tr. 232)  However, there is no medical evidence of an ulcer.

The ALJ clearly considered Plaintiff's depression and anxiety, and determined (based on the testimony of the vocational expert) that because of her depression and anxiety, she was limited to unskilled light work.  (Tr. 18-19)  The ALJ properly utilized the psychiatric review technique.[5]  (Tr. 18)  There is little mention in Plaintiff's

---

[4]There are other inconsistencies in the record.  For instance, Plaintiff told Dr. Toombs that she did not use tobacco.  (Tr. 232)  On other occasions, she admitted that she did.  (Tr. 185, 194, 310)

[5]In addition to the five-step sequential evaluation process noted above, there is a sequential process for evaluation of mental impairments set out in 20 C.F.R. §§ 404.1520a, 416.920a (2003).
   The first step is to record pertinent signs, symptoms, findings, functional limitations and effects of treatment contained in claimant's medical records.  20 C.F.R. § 404.1520a(b)(1).  The mental status examination and psychiatric history will ordinarily provide the needed information.  Id.
   If a mental impairment is found*, as it was in this case, then it is necessary to analyze whether certain medical findings, which have been found especially relevant to the ability to work, are present or absent.  20 C.F.R. § 404.1520a(b)(2).
   It is then necessary to rate the degree of functional loss from the impairment(s) in the four areas of function essential to work: activities of daily living; social functioning; concentration, persistence or pace and deterioration or decompensation in work or work-like settings.  20 C.F.R. § 404.1520a(b)(3).
   After rating the degree of functional loss on the appropriate scale, see id., the severity of the impairment(s) is determined.  20 C.F.R. § 404.1520a(c).  If the impairment(s) is severe, it must be determined if it meets or exceeds a listed mental disorder.  20 C.F.R. § 404.1520a(c)(2).  This is done by comparing the previously recorded medical findings and the resulting functional loss against the Paragraph A and Paragraph B criteria of the appropriate listing.  Id.

medical records of depression or anxiety after her alleged onset.  On August 8, 2002, she told Dr. Kelly that she was depressed at times and had much anxiety with taking care of her grandchildren.  (Tr. 394)  Substantial evidence on the record as a whole supports the Commissioner's assessment of her depression and anxiety.

It is not the task of this Court to review the evidence and make an independent decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ.  E.g., Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996); Pratt v. Sullivan, 956 F.2d 830, 833 (8th Cir. 1992).

There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.  Richardson v. Perales, 402 U.S. at 401; see also Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004).  The Commissioner's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final determination of the Commissioner be affirmed and that Plaintiff's complaint be dismissed with prejudice.

DATED this   21   day of November, 2005.

_____
UNITED STATES MAGISTRATE JUDGE

---

If the impairment(s) is severe, but does not meet or equal the appropriate listing, then a residual functional capacity assessment is necessary.  20 C.F.R. § 404.1520a(c)(3).